## Charles Conway v. John Gorczyk, Commissioner, Department of Corrections

[765 A.2d 463]

No. 99-553

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Dimotsis, D.J., Specially Assigned**

Opinion Filed September 29, 2000

Motion for Reargument Denied November 20, 2000

*Charles Conway*, Pro Se, Swanton, Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, Montpelier, and *David R. Groff*, Assistant Attorney General, Waterbury, for Defendant-Appellee.

**Skoglund, J.** Vermont inmates serving terms of imprisonment may earn reductions in their minimum and maximum terms by participating in treatment, educational or vocational training programs offered by the Department of Corrections (DOC). See 28 V.S.A. § 811(b).[1] Petitioner Charles Conway was terminated from participation in the DOC's Cognitive Self Change program. The questions presented in this case are whether an inmate has a liberty interest in participating in rehabilitative programs that may result in sentence reduction, and if so, what procedural due process must be afforded before decisions can be made that implicate the inmate's interest. We affirm the Franklin Superior Court's decision holding that no liberty interest is implicated.

In 1997, petitioner Charles Conway began serving a three-to-five-year sentence at Northwest State Correctional Facility for a conviction of lewd-and-lascivious behavior with a child. That year, he began participating in the correctional facility's Cognitive Self Change program. As a participant in the program, petitioner had the opportunity to earn up to ten days of discretionary good-time credit per month. See 28 V.S.A. § 811(b) (inmate who participates in program *may* earn up to ten days good-time credit per month) (emphasis added). This was in addition to the five days of good-time credit per month mandated by § 811(a). See *id.* § 811(a) (inmate *shall* earn five days good-time credit "for each month during which the inmate has faithfully observed all the rules and regulations of the institution") (emphasis added). In 1998, three inmates alleged that petitioner had engaged in sexual behavior and made inappropriate sexual comments

---

[1] 28 V.S.A. § 811(b) was amended effective July 1, 2000, and, as of that date, provides for reductions only in inmates' maximum terms. See *1999, No. 127* (Adj. Sess.), § 1. The amendment has no bearing on this case, however, as § 2 of the amended statute provides that the above-mentioned provision is applicable only to "persons who commit offenses on or after the effective date of this act." *Id.*

to them. Petitioner was notified of the charges against him and was given an opportunity to address the allegations before the program's treatment team. The team determined that petitioner should be removed from the program for a minimum of thirty days and provided petitioner with an assignment to complete prior to readmission into the program. Petitioner filed a V.R.C.P. 75 (Review of Governmental Action) claim in Franklin Superior Court, seeking reinstatement into the program. Petitioner alleged that he had a liberty interest in the program because it afforded him the opportunity to earn good-time credits, and thus he was entitled to procedural due process prior to being removed from the program. Petitioner argued that the hearing afforded by the team did not satisfy procedural due process requirements,[2] and therefore his removal from the program violated his constitutional rights.[3] The court denied petitioner's motion for summary judgment and granted the motion for summary judgment filed on behalf of DOC Commissioner John Gorczyk. Petitioner appeals from that decision. We affirm.

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted). Petitioner asserts that, under both the United States Constitution and the Vermont Constitution, he has a liberty interest in participating in the program because it affords him the opportunity to earn good-time credits.[4] He further argues that the procedures the team employed were insufficient. We first examine whether, under the United States Constitution, petitioner has such a liberty interest.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court ruled that prisoners' liberty interests protected by

---

[2] Specifically, petitioner argued he was not provided advance written notice of the hearing; he was not given an opportunity to confront and cross-examine his accusers; and the team should have, but failed to, employ a preponderance-of-the-evidence standard in determining whether petitioner had committed the alleged acts.

[3] Petitioner's original complaint alleged that his rights under the Fifth and Fourteenth Amendments to the United States Constitution had been violated. However, in his reply to the motion for summary judgment filed on behalf of the Commissioner, he alleged that his rights under the Vermont Constitution had been violated, as well. Before this Court, he alleged that his rights under both the United States Constitution and the Vermont Constitution were violated.

[4] It is undisputed that petitioner has lost no previously accrued good-time credits as a result of his removal from the program.

the due process clause of the United States Constitution would be limited to freedom from restraints imposing "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In *Conner*, an inmate was sentenced to disciplinary segregation, or solitary confinement, after he was found guilty of misconduct. He filed an administrative appeal, and the misconduct charge was eventually dismissed. Before the charge was dismissed, however, Conner sued in federal court, arguing that prison officials violated his procedural due process rights because he had not been given the opportunity to call witnesses at his disciplinary hearing. The district court granted summary judgment on behalf of the prison officials. The Court of Appeals for the Ninth Circuit reversed, concluding that Conner had a liberty interest in remaining free from solitary confinement, and there was a genuine issue of material fact with regard to whether the prison officials had violated Conner's procedural due process rights.

The United States Supreme Court reversed, holding that no procedural process was due because Conner had no liberty interest in remaining free from solitary confinement. See *id.* at 486. The Court reasoned that (1) subjecting Conner to solitary confinement for thirty days did not "work a major disruption in his environment," *id.*; (2) placing Conner in solitary confinement would not "inevitably affect the duration of his sentence," since under state law the parole board's decision of whether to grant or deny parole was discretionary, *id.* at 487; and (3) solitary confinement is "within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* Thus, according to the Court, subjecting Conner to solitary confinement for thirty days did not impose an atypical-and-significant hardship upon him, and therefore, under the United States Constitution, he had no state-created liberty interest in remaining free from solitary confinement.

Our most recent opportunity to review a claim by inmates that a DOC policy violated their due process rights under the Vermont Constitution was presented in *Parker v. Gorczyk*, 170 Vt. 263, 744 A.2d 410 (1999). In *Parker*, the plaintiffs sought to enjoin the DOC from implementing a policy that would make prisoners convicted of violent felonies ineligible for furlough until the expiration of their minimum sentences. Prior to the promulgation of that policy, all prisoners, including those convicted of violent felonies, were entitled to an individualized furlough assessment — a discretionary decision — prior to the expiration of their minimum sentences. Declining to

rely on the Supreme Court's use of legal catch-words — such as the "atypical and significant hardship" phrase relied on in *Conner* — to assess when claimed interests required procedural due process protections, we explained that, under the Vermont Constitution, the determination of whether due process protections are required in a specific case entails "a fact-sensitive examination of the particular circumstances involved, including consideration of the nature and significance of the interest at stake, the potential impact of any decision resulting in a deprivation of that interest, and the role that procedural protections might play in such a decision." *Id.* at 273, 744 A.2d at 417.

We first concluded that the plaintiffs' interest in the possibility of obtaining furlough prior to the expiration of their minimum sentences was "sharply limited," stating:

> [P]laintiffs are concerned with obtaining eligibility for furlough rather than maintaining an already realized conditional freedom. Conceding that they are not necessarily entitled to furlough, plaintiffs ask only for individual furlough assessments that may or may not result in their obtaining furlough. As Judge Henry Friendly cogently noted, "there is a human difference between losing what one has and not getting what one wants." Without deciding whether revocation of furlough implicates due process protections under the Vermont Constitution, we conclude that plaintiffs' anticipation of furlough is a less significant interest than if they were defending against revocation of furlough.

*Id.* at 274, 744 A.2d at 417 (quoting H. Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev. 1267, 1296 (1975)).

Second, in examining the potential impact of any decision resulting in the deprivation of the alleged interest, we found the plaintiffs' argument that prisoners who attained furlough status had a better chance for parole to be speculative and unsupported by the evidence presented below. See *id.* at 274, 744 A.2d at 418. Finally, with regard to the role that procedural protections might play, we noted that, while the policy would deny furlough to those violent offenders who could be reintegrated successfully, it also assured that those who were not ready for community reintegration would not be mistakenly released. As we stated: "'[T]here simply is no constitutional guarantee that all executive decisionmaking must comply with standards

that assure error-free determinations.'" *Id.* at 275, 744 A.2d at 418 (quoting *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979)). Thus, we held that, under the Vermont Constitution, because of the limited nature of the plaintiffs' purported liberty interest, the plaintiffs were not entitled to procedural due process protections. See *id.* at 276, 744 A.2d at 419.

In this case, we find no liberty interest implicated under either the United States Constitution or the Vermont Constitution, and thus, no violation of petitioner's due process rights.

First, petitioner was sentenced to three to five years' imprisonment. Depriving him of the opportunity to earn additional good-time credits did not "work a major disruption in his environment." *Conner*, 515 U.S. at 486. Second, as noted, under 28 V.S.A. § 811(b), the decision of whether to grant good-time credits to an inmate who has successfully participated in a prison program is discretionary. Therefore, whether petitioner would actually earn good-time credits if he successfully participated in the program is speculative. Consequently, his removal from the program did not "inevitably affect the duration of his sentence." *Id.* at 487. Finally, requiring petitioner to serve the entire term, with no grant of discretionary good-time credit, is "within the range of confinement to be normally expected" for one in his position. *Id.* Therefore, removing petitioner from the program and denying him the opportunity to earn additional good-time credits did not impose an atypical-and-significant hardship upon him. Accordingly, under the United States Constitution, petitioner had no liberty interest in the opportunity to earn good-time credits, and thus was not entitled to procedural due process prior to being terminated from the program. See *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000) ("Although inmates have a liberty interest in good time credit they have already earned, no such interest has been recognized in the opportunity to earn good time credit where, as here, prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit.") (citation omitted); *Anderson v. Colorado Dep't of Corrections*, No. 98-1477, 1999 WL 387163, at *1 (10th Cir. June 14, 1999) ("[B]ecause neither the loss of a prison job nor the loss of an opportunity to earn good time credits constitutes any atypical or significant hardship upon the petitioner in relation to the ordinary incidence of prison life sufficient to create a liberty interest, these allegations do not state a claim for a due process violation"), *cert. denied*, 528 U.S. 1165, 120 S. Ct. 1183 (2000); *Thompson v. Thompson*, No. 96-6352, 1998 WL 211775, at *1 (6th Cir.

Apr. 23, 1998) ("Although [inmate] . . . argues that his disciplinary conviction may impact his future ability to earn good time credits that lead to earlier parole, such speculative, collateral consequences of a prison disciplinary conviction are insufficient to create a liberty interest."); *Scaife v. Wilson*, 861 F. Supp. 1027, 1029 (D. Kan. 1994) ("Plaintiff lost no good time credit already credited. Instead, plaintiff's disciplinary conviction had an adverse impact on the discretionary award of future good time credit. The court finds no violation of plaintiff's constitutional rights . . . .").

The result is the same under the Vermont Constitution. First, as noted, the decision of whether to grant good-time credits to an inmate who has successfully participated in a prison program is discretionary. Therefore, whether petitioner would actually earn good-time credits if he successfully participated in the program is speculative. Further, petitioner was not deprived of any good-time credits he previously earned. Thus, as in *Parker*, petitioner is aggrieved not because he is losing what he already has, but because he is not getting what he wants. See *Parker*, 170 Vt. at 274, 744 A.2d at 417. Second, the potential impact of the decision to terminate petitioner from the Cognitive Self Change program is obvious: To deprive petitioner of the opportunity to earn good-time credits is to deprive him of the potential to shorten his sentence. However, petitioner's opportunity to earn a reduction in his incarcerative term is just that, an opportunity. It is not a liberty interest that was interfered with by the state.

As previously noted, a plaintiff is only entitled to procedural due process protections once he has demonstrated that he has a liberty interest in the action being challenged. Thus, because we conclude that petitioner has no liberty interest in remaining in the program, we do not address whether the processes employed were sufficient.

*Affirmed.*