NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 44

No. 2019-281

| | |
|---|---|
| Kirk Wool | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Office of Professional Regulation | January Term, 2020 |

Mary Miles Teachout, J.

Kirk Wool, Pro Se, Tutwiler, Mississippi, Plaintiff-Appellant.

Thomas J. Donovan, Jr., Attorney General, and David Groff, Assistant Attorney General, Montpelier, for Defendant-Appellee.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **COHEN, J.** Petitioner Kirk Wool appeals the superior court's dismissal of his petition for mandamus relief against the Office of Professional Regulation (OPR) for lack of standing and for failure to state a claim upon which relief can be granted. Although we hold that petitioner has standing, we affirm the court's dismissal for failure to state a claim.

¶ 2. The Legislature has established a statutory scheme authorizing OPR and the Board of Psychological Examiners to license, regulate, investigate, and discipline psychologists in the state. See generally 3 V.S.A. §§ 121-37; 26 V.S.A. §§ 3001-18. In particular, the Board "shall investigate all complaints and charges of unprofessional conduct against any licensee," 26 V.S.A. § 3016a(c), and after giving the licensee an opportunity for hearing, "may take disciplinary action against a licensee . . . found guilty of unprofessional conduct," id. § 3016a(a). See also 3 V.S.A.

§ 123(a) (authorizing OPR to provide "administrative, secretarial, financial, investigatory, inspection, and legal services" to Board).

¶ 3. Petitioner is an inmate in the custody of the Department of Corrections. In 2015, he filed a disciplinary complaint against a psychologist, alleging that the psychologist had falsified certain scores in a risk assessment and that these scores force him to "max out" his sentence and serve fourteen additional years of incarceration. In 2016, while his complaint was under investigation, petitioner wrote to OPR requesting copies of the records the psychologist filed to defend against the complaint. Petitioner seeks the records to rebut the psychologist's defense with further evidence in support of the complaint. OPR replied that it was precluded by statute from releasing the requested records to the public because the complaint was under investigation.

¶ 4. Petitioner then filed a pro se petition for a writ of mandamus and for extraordinary relief in superior court, arguing that as the complainant in the disciplinary proceedings, he has a due process right to the records under the U.S. and Vermont Constitutions. Finding that petitioner lacked standing, was not entitled to mandamus or extraordinary relief, and failed to raise a colorable constitutional claim, the superior court granted OPR's motions to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. See V.R.C.P. 12(b)(1), (6). Petitioner appealed to this Court.

¶ 5. In October 2019, while this appeal was pending, OPR closed its investigation of the psychologist without filing disciplinary charges. Because the investigation has concluded, we must first determine whether the appeal has become moot, thereby divesting us of subject-matter jurisdiction.

I. Mootness

¶ 6. The Vermont Constitution "limits the authority of the courts to the determination of actual, live controversies between adverse litigants." In re Durkee, 2017 VT 49, ¶ 11, 205 Vt. 11, 171 A.3d 33 (quotation omitted). Accordingly, "[f]or this Court to have jurisdiction over an appeal, the appeal must involve an actual controversy arising between adverse litigants who have

2

a legally cognizable interest in the outcome of the case." Paige v. State, 2017 VT 54, ¶ 6, 205 Vt. 287, 171 A.3d 1011. "Even if a case originally presented an actual controversy in the trial court, the case must remain live throughout the appellate process for us to examine the issues." Houston v. Town of Waitsfield, 2007 VT 135, ¶ 5, 183 Vt. 543, 944 A.2d 260. Thus, a case is moot if at any point we can "no longer grant effective relief." Id. (quotation omitted).

¶ 7.     Although OPR has concluded its investigation, this appeal is not moot because petitioner retains a legally cognizable interest in its outcome. Petitioner argues that as the complainant in the disciplinary proceedings, he has a due process right to the records, with which he can rebut the psychologist's defense and prove the merit of his complaint. If we were to find such a right on the merits, then OPR's refusal to produce the records would be unlawful, and we could order OPR to produce the records and reopen its investigation. That renewed investigation could result in a finding of unprofessional conduct by, and disciplinary action against, the psychologist. See 3 V.S.A. § 129a(a)(7), (d)(1) (providing that "[w]illfully making or filing false reports or records in the practice of the profession" constitutes unprofessional conduct and authorizing Board to take disciplinary action on that basis); 26 V.S.A. §§ 3016, 3016a(a) (same). Because we could still grant effective relief to petitioner, we move on to consider the issues on appeal.

## II.  Standard of Review

¶ 8.     Motions to dismiss for lack of subject-matter jurisdiction and for failure to state a claim under Vermont Rules of Civil Procedure 12(b)(1) and (6) may not be granted "unless it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Murray v. City of Burlington, 2012 VT 11, ¶ 2, 191 Vt. 597, 44 A.3d 162 (mem.) (quotation omitted). "[W]e assume as true the nonmoving party's factual allegations and accept all reasonable inferences that may be drawn from those facts." Id. Our review of dismissals under Rules 12(b)(1) and (6) is plenary and non deferential. See Conley v. Crisafulli, 2010 VT 38, ¶ 3, 188 Vt. 11, 999 A.2d 677 (applying de novo review to Rule 12(b)(1) dismissal); Skaskiw v. Vt.

3

Agency of Agric., 2014 VT 133, ¶ 6, 198 Vt. 187, 112 A.3d 1277 (applying de novo review to Rule 12(b)(6) dismissal).

### III. Dismissal for Lack of Standing under Rule 12(b)(1)

¶ 9.    We first review the superior court's dismissal for lack of standing.  OPR argues that petitioner lacks constitutional standing to litigate issues related to the disciplinary proceedings because he is not a party to those proceedings, which it maintains are intended for the protection of the public generally.  For support, OPR points to a statute governing professional regulation and its agency regulations.  See 26 V.S.A. § 3101(a) (providing that "[i]t is the policy of the State of Vermont that regulation be imposed upon a profession or occupation solely for the purpose of protecting the public"); Office of Professional Regulation Administrative Rules of Practice, Rule 1.1(J), Code of Vt. Rules 04 030 005, https://sos.vermont.gov/media/osal1nmq/administrative-rules-of-practice.pdf [https://perma.cc/32SE-VTP4] (defining "party" in disciplinary hearing and appeal as "the licensee and the State of Vermont").

¶ 10.    Like the mootness doctrine, standing is rooted in constitutional principles requiring actual controversies between adverse litigants and is a jurisdictional prerequisite.  See Brod v. Agency of Nat. Res., 2007 VT 87, ¶ 8, 182 Vt. 234, 936 A.2d 1286 (holding that "Vermont courts are vested with subject matter jurisdiction only over actual cases or controversies involving litigants with adverse interests," and that "[t]o have a case or controversy subject to the jurisdiction of the court, the plaintiffs must have standing").  "In the absence of standing, any judicial decision would be merely advisory, and Vermont courts are without constitutional authority to issue advisory opinions." Id.  To satisfy constitutional standing, a plaintiff must allege facts on the face of the complaint that show "(1) injury in fact, (2) causation, and (3) redressability." Severson v. City of Burlington, 2019 VT 41, ¶¶ 9-10, __ Vt. __, 215 A.3d 102 (quotation omitted).  Specifically, the plaintiff "must have suffered a particular injury that is attributable to the defendant and that can be redressed by a court of law." Parker v. Town of Milton, 169 Vt. 74, 77, 726 A.2d 477, 480 (1998).  "The alleged injury must be an invasion of a

legally protected interest, not a generalized harm to the public." Paige v. State, 2018 VT 136, ¶ 9, 209 Vt. 379, 205 A.3d 526 (quotation omitted).[1]

¶ 11.    Although closely related, standing and the merits are separate inquiries, such that the former does not depend on the latter.  See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n, 135 S. Ct. 2652, 2663 (2015) (noting that "one must not confuse weakness on the merits with absence of Article III standing" (quotation and alteration omitted)); ASARCO Inc. v. Kadish, 490 U.S. 605, 624 (1989) (observing that "although . . . standing often turns on the nature and source of the claim asserted, it in no way depends on the merits of the claim" (quotation and alteration omitted)).  As noted, the plaintiff's burden to satisfy standing is merely to " 'allege facts sufficient to confer standing on the face of the complaint.' " Severson, 2019 VT 41, ¶ 9 (quoting Parker, 169 Vt. at 76, 726 A.2d at 479); see also Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." (quotation and alteration omitted)); 13A C. Wright et al., Fed. Prac. & Proc. § 3531 (3d ed.) (observing that because focus of standing is on party bringing claim and not claim itself, "standing is not defeated by failure to prevail on the

---

[1]    Along with these constitutional standing requirements, we have also adopted self-imposed, prudential limitations on our exercise of jurisdiction under the standing doctrine.  See, e.g., Agency of Nat. Res. v. U.S. Fire Ins. Co., 173 Vt. 302, 306, 796 A.2d 476, 479 (2001) ("The question of standing involves both constitutional limitations on jurisdiction and prudential limitations on its exercise." (quotation and alteration omitted)); Hinesburg Sand & Gravel Co. v. State, 166 Vt. 337, 341, 693 A.2d 1045, 1048 (1997) ("Standing embodies a core constitutional component and a prudential component of self-imposed judicial limits.").  These prudential limits include "the general prohibition on a litigant's raising another person's legal rights, the rule against adjudication of generalized grievances, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Hinesburg, 166 Vt. at 341, 693 A.2d at 1048 (quotation omitted).  Although we have identified federal cases describing the zone-of-interest test as a principle of general application and as nondiscretionary, see id. at 342, 693 A.2d at 1048, we have not explained when Vermont courts must apply the test, nor have we applied the test in every case where standing was at issue.  See, e.g., Turner v. Shumlin, 2017 VT 2, ¶ 18, 204 Vt. 78, 163 A.3d 1173 (per curiam) (finding constitutional standing satisfied but not addressing zone-of-interest test).  Because OPR did not raise prudential standing in the superior court or in this Court, we do not apply those principles in this case or explain their applicability in future cases—a matter we leave for a future controversy where the issue is raised and adequately briefed.

5

merits," and that "[a] sufficient allegation of injury establishes standing to win a determination whether the law affords redress for that injury"). The purpose of the standing doctrine is not to weed out unmeritorious claims; it is to determine whether the "plaintiff's stake in the outcome of the controversy is sufficient 'to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' " Turner v. Shumlin, 2017 VT 2, ¶ 10, 204 Vt. 78, 163 A.3d 1173 (per curiam) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).[2]

¶ 12.    To deny constitutional standing in this case because the statutory scheme and agency regulations do not confer on petitioner the right asserted would be to resolve the matter on the merits and make the standing doctrine redundant. Although we go on to hold that petitioner has no right to the requested records, he alleged the necessary facts to cross the constitutional standing threshold. In his petition for mandamus and extraordinary relief, petitioner alleged that the psychologist falsified his scores in a risk assessment, prompting him to file a disciplinary complaint; that OPR denied him access to the records the psychologist filed to defend against the complaint; and that OPR's refusal to produce said records renders him unable to counter the psychologist's defense and prove the merit of his complaint. Petitioner alleges an invasion of a legally protected interest in OPR's violation of his due process right to the records and the resulting inability to prove the merit of his complaint. Petitioner claims the due process right, not as a member of the public, but in his capacity as a complainant in the statutory scheme established to discipline psychologists. His position as a complainant is, on the face of the complaint, different from that of a member of the public with no personal stake in the discipline of a particular psychologist. Accordingly, petitioner satisfies the injury-in-fact requirement. Further, there is a causal connection between the allegedly unlawful conduct and the alleged injury—here, between OPR's unwillingness to grant petitioner access to the records and the resulting inability to counter

---

[2]    Other tools, such as motions to dismiss for failure to state a claim under Rule 12(b)(6) and for summary judgment under Rule 56, are available for the former purpose.

the psychologist's defense and prove the merit of his complaint. Finally, as noted in the mootness discussion, this Court can redress the alleged injury by ordering OPR to produce the records and reopen its investigation, which could result in a finding of unprofessional conduct and disciplinary action. See supra, ¶ 7.

¶ 13. We are further impelled to this result by our standard for reviewing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), in which "we assume as true the nonmoving party's factual allegations and accept all reasonable inferences that may be drawn from those facts," and which we deny "unless it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Murray, 2012 VT 11, ¶ 2 (quotation omitted). Assuming as true the facts presented, and accepting all reasonable inferences that can be drawn from them, with respect to the standing question, we cannot say beyond doubt that no facts exist that would entitle petitioner to relief. The superior court erred in dismissing the petition for lack of standing. Petitioner has standing to make his arguments before the courts and we accordingly have jurisdiction to decide them on the merits.

¶ 14. OPR observes that we have denied complainants standing to challenge actions of the regulatory bodies in the attorney-discipline context. In In re Faignant, the petitioner, an attorney, filed a disciplinary complaint against another attorney on behalf of himself and his client. 2019 VT 29, __ Vt. __, 212 A.3d 623 (mem.). After Bar Counsel reviewed and dismissed the complaint, the petitioner sought extraordinary relief, asking this Court to order Bar Counsel to refer the complaint for investigation. We recalled our settled law establishing that the purposes of the attorney-discipline process are to protect the public, to maintain public confidence in the bar, and to deter other attorneys from engaging in misconduct. Id. ¶ 12 (citing In re Robinson, 2019 VT 8, ¶ 73, __Vt. __, 209 A.3d 570). We observed that the process does not provide "a means of redress for one claiming to have been personally wronged by an attorney," and held that the petitioner and his client lacked standing because neither "suffered an 'injury in fact' from Bar

7

Counsel's screening decision through 'the violation of [the client's] constitutional right to trial free of conflicts.' " Id. ¶¶ 12-13 (citation omitted).

¶ 15. Multiple factual and legal distinctions compel a different result here on the question of standing. First, because different disciplinary schemes are at issue, our inability in Faignant to identify a threat of injury to a "constitutional right to trial free of conflicts" in the attorney-discipline rules does not constrain our ability to recognize a threat of injury to the legally protected interest in the facts and statutory scheme before us here. Second, the Faignant petitioner was seeking standing to insert himself into the disciplinary process by compelling the regulatory body to act on the complaint. He was leveraging his position as the complainant to compel Bar Counsel to refer the complaint for investigation. Here, petitioner seeks standing only to argue that, as the complainant, he has a right to see certain documents filed in the proceedings. He does not ask OPR to take any particular action on the complaint itself. Third, in Faignant we relied on settled interpretations of this Court's rules on attorney discipline, an area constitutionally committed to the Court's authority. See id. ¶ 12 (citing Robinson, 2019 VT 8, ¶ 73). There, we had already established the purposes of attorney disciplinary actions. See Robinson, 2019 VT 8, ¶ 73 (citing In re Neisner, 2010 VT 102, ¶ 24, 189 Vt. 145, 16 A.3d 587). And we had recognized that this Court has " 'disciplinary authority concerning all judicial officers and attorneys at law in the State,' " id. ¶ 21 (quoting Vt. Const. ch. II, § 30); that "this Court, not the Legislature, tasked the [Professional Responsibility] Board with administering the [attorney] disciplinary program," id. ¶ 23; and that " 'this Court retains inherent power to dispose of individual cases of lawyer discipline,' " id. ¶ 21 (alteration omitted) (quoting In re Berk, 157 Vt. 524, 527, 602 A.2d 946, 948 (1991) (per curiam)). Here, in contrast, we have no settled law on the purposes of or rights in the psychologist disciplinary statutes. Moreover, unlike the attorney-discipline process, this scheme is a creature of the Legislature, such that to determine its purposes and rights, we must divine the Legislature's intent. See State v. Davis, 2020 VT 20, ¶ 47, __ Vt. __, __A.3d __ (noting that our goal in statutory interpretation is to implement Legislature's intent, which we do, not by reading

8

statutes in isolation, but by considering statutory scheme as a whole). It would be premature of us to hold that a complainant in this statutory scheme has no rights—and therefore no standing—without reaching the merits and determining the legislative intent behind the scheme.

¶ 16. For similar reasons, we reject OPR's argument under Linda R.S. v. Richard D., 410 U.S. 614 (1973), that petitioner lacks standing because he is in the same position as a complainant in a criminal prosecution. In Linda, the State of Texas had adopted a law criminalizing parents' failure to support their children, and the courts construed the law to apply only to parents of "legitimate" children. A mother alleged that she filed a complaint against her child's father with a district attorney, who refused to prosecute because the child was "illegitimate." This construction of the law, the mother argued, violated the Equal Protection Clause. Observing that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," the U.S. Supreme Court held that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." Id. at 619.

¶ 17. Even if legislatures do not grant complainants any rights under criminal statutes or in the criminal justice system, under the threshold standing inquiry, we cannot say that our Legislature did not grant complainants in this intricate civil statutory scheme the narrow right to obtain certain documents. Without reaching the merits and examining the statutory scheme as a whole, we are not prepared to say, as OPR argues, that petitioner has no rights or interests at stake in this disciplinary process. To illustrate the point, we note some evidence of the Legislature's concern with the interests of complainants in this disciplinary scheme in 3 V.S.A. § 129(d), which provides:

> A board shall notify parties, in writing, of their right to appeal final decisions of the board. A board or the Director [of OPR] shall also notify complainants in writing of the result of any disciplinary investigation made with reference to a complaint brought by them to the board or Director. When a disciplinary investigation results in a stipulation filed with the board, the board or the Director shall provide the complainant with a copy of the stipulation and notice of

9

the stipulation review scheduled before the board. The complainant shall have the right to be heard at the stipulation review.

This statute alone refutes OPR's argument that a complainant in this statutory scheme has no rights and no interests in the outcome of these disciplinary proceedings. The Legislature clearly considered some interests and granted some rights. Whether petitioner has the right he claims is a matter to which we now turn in examining the superior court's dismissal for failure to state a claim.

## IV. Dismissal for Failure to State a Claim under Rule 12(b)(6)

¶ 18. We first clarify that the pro se petition for mandamus and extraordinary relief is really a petition for review of governmental action under Vermont Rule of Civil Procedure 75. "Although the formal writ of mandamus was abolished by V.R.C.P. 81(b), relief in the nature of mandamus is still available under V.R.C.P. 75." Garzo v. Stowe Bd. of Adjustment, 144 Vt. 298, 299-300, 476 A.2d 125, 126 (1984); see also Reporter's Notes, V.R.C.P. 75 ("Rule 75(a) . . . does not purport to say what determinations are reviewable, but provides a procedure applicable whenever [superior] court review . . . is available as a matter of general law by proceedings in the nature of certiorari, mandamus, or prohibition."). "Mandamus is a command from the court to an official, agency, or lower tribunal to perform a simple and definite ministerial duty imposed by law." Wool v. Menard, 2018 VT 23, ¶ 11, 207 Vt. 25, 185 A.3d 577 (quotation omitted). Three requirements must be satisfied to grant mandamus relief:

> (1) the petitioner must have a clear and certain right to the action sought by the request for a writ; (2) the writ must be for the enforcement of ministerial duties, but not for review of the performance of official acts that involve the exercise of the official's judgment or discretion; and (3) there must be no other adequate remedy at law.

Id. (quoting In re Fairchild, 159 Vt. 125, 130, 616 A.2d 228, 231 (1992)).

¶ 19. Here, petitioner argues that he has a clear and certain right to the records under the due process provisions of the U.S. and Vermont Constitutions. Although unspecified in the pro se petition and appellate briefs, we understand petitioner to raise procedural due process arguments

10

under the liberty prong of the Fourteenth Amendment's Due Process Clause and under Chapter I, Article 10 of the Vermont Constitution.

¶ 20. The Fourteenth Amendment to the U.S. Constitution protects persons against state deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Courts examine procedural due process questions in two steps: the first asks whether there exists a liberty . . . interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Conway v. Gorczyk, 171 Vt. 374, 376, 765 A.2d 463, 465 (2000) (quotation omitted). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted).

¶ 21. Petitioner's claim can only fall under the second category of liberty interests. The issue petitioner presents is whether he has a liberty interest in the records as a complainant in this state's statutory scheme to discipline psychologists. If he has such a liberty interest, it is found in the statutory scheme, not in a guarantee implicit in the word liberty. Accordingly, we seek to determine whether petitioner has an expectation or interest created by the statutory scheme at issue.[3]

¶ 22. Our goal in interpreting statutes is to divine and implement the Legislature's intent. State v. Berard, 2019 VT 65, ¶ 12, __ Vt. __, 220 A.3d 759. We examine the plain language of the statute, and if this language is "clear and unambiguous, we enforce the statute according to its terms." State v. Blake, 2017 VT 68, ¶ 8, 205 Vt. 265, 174 A.3d 126 (quotation omitted). However, we also look "to other relevant or related statutes for guidance, because a proper interpretation

---

[3] The issue petitioner raises is not whether the State deprived him of liberty without due process by forcing him to serve fourteen years of incarceration based on a falsified risk assessment. We have no facts—or even allegations—regarding the process to administer the risk assessment, how or why it leads to the additional years of incarceration, or whether there are procedures to challenge the assessment. That issue is not before the Court, and we express no opinion on the subject.

must further the entire statutory scheme." Id. (quotation omitted); see also Davis, 2020 VT 20, ¶ 47 (noting that when statute is one component of broader statutory scheme addressing same subject matter, "we must consider the statutory scheme as a whole"); Lyons v. Chittenden Cent. Supervisory Union, 2018 VT 26, ¶ 13, 207 Vt. 59, 185 A.3d 551 ("Our task is to ensure that a statute's enacting purpose is given effect, and we do so by examining and considering fairly, not just isolated sentences or phrases, but the whole and every part of the statute, together with other statutes standing in pari materia with it, as parts of a unified statutory system." (quotation and alterations omitted)).

¶ 23.    The disciplinary scheme at issue here spans 3 V.S.A. §§ 121-37 and 26 V.S.A. §§ 3001-18.  We consider 26 V.S.A. §§ 3101-07 as well, because these sections also govern regulation of professions in the state.  No statute in the scheme explicitly provides the complainant a right to the documents petitioner requests, nor does a statute grant the complainant party status in the proceedings.  This is itself evidence that the Legislature did not intend to grant petitioner the right he claims.  See Harris v. Sherman, 167 Vt. 613, 614, 708 A.2d 1348, 1350 (1998) (mem.) (finding evidence of legislative intent in legislative silence).  Other statutes in the scheme convince us that the Legislature did not create an adversarial process between the complainant and the licensee such that the former is entitled to review or rebut the latter's submissions to OPR at the investigation stage.

¶ 24.    As OPR observes, the Legislature declared that "[i]t is the policy of the State of Vermont that regulation be imposed upon a profession or occupation solely for the purpose of protecting the public" and that "the form of regulation adopted by the State shall be the least restrictive form of regulation necessary to protect the public interest."  26 V.S.A. § 3101(a)-(b).  This statute indicates that in regulating professions in this statutory scheme, the Legislature was concerned with the public interest generally, not with redressing a complainant's personal grievance against a licensee, which can be done through civil litigation in the courts.

12

¶ 25.    Returning to 3 V.S.A. § 129(d), the Legislature charged the Board with notifying "parties" to the disciplinary proceedings of "their right to appeal final decisions of the [B]oard." Immediately thereafter, the Legislature directed the Board or OPR to "also notify complainants in writing of the result of any disciplinary investigation made with reference to a complaint brought by them." Id. The different treatment of "parties" and "complainants" in this statute indicates that the Legislature did not intend to make complainants parties to the proceedings, undermining any inference that complainants are entitled to review the documents filed by other parties.

¶ 26.    The remainder of § 129(d) concerns investigations resulting in a stipulation. In those cases, the statute grants complainants a right to obtain a copy of the stipulation, a right to notice of the stipulation review scheduled before the Board, and a right to be heard at the stipulation review. Id. The Legislature carved out a limited role for complainants in those cases, but it did not include a right to obtain documents filed by the licensee during the investigation.

¶ 27.    Because complainants are not parties to the proceedings, the Legislature not only declined to grant them access to the records at issue, it prohibited OPR from disclosing the records to them. Under 3 V.S.A. § 131, OPR must release certain information to the public: For all complaints—whether disciplinary charges have been filed or not—OPR must release (1) the date and nature of the complaint, excluding the identity of the licensee, and (2) "a summary of the completed investigation." Id. § 131(c)(1)(A)-(B). For complaints resulting in filing of disciplinary charges, stipulations, or disciplinary action, OPR must in addition release:

>    (A) the name and business addresses of the licensee and complainant;
>
>    (B) formal charges, provided that they have been served or a reasonable effort to serve them has been made, and all subsequent pleadings filed by the parties;
>
>    (C) the findings, conclusions, rulings, and orders of the board or administrative law officer;
>
>    (D) the transcript of the hearing, if one has been made, and exhibits admitted at the hearing;

13

(E) stipulations filed with the board or administrative law officer; and

(F) final disposition of the matter by the appellate officer or the courts.

Id. § 131(c)(2)(A)-(F). The statute then proscribes OPR from releasing "any other information regarding unprofessional conduct complaints, investigations, proceedings, and related records except the information required to be released under this section." Id. § 131(d). The statute makes no exception for release of records to the complainant. Because disciplinary charges had not been filed against the psychologist when petitioner requested the records at issue, OPR was prohibited from releasing the records to petitioner, who was merely a member of the public. Only if OPR had filed disciplinary charges would petitioner have a right to access the records, potentially as "subsequent pleadings filed by the parties" or "exhibits admitted at the hearing." See id. § 131(c)(2)(B), (D). This release, moreover, would not be pursuant to his status as the complainant, but under his status as a member of the public.

¶ 28. Petitioner argues that he has a right to the records under 3 V.S.A. § 131(g), which provides that "[n]othing in this section shall prohibit the disclosure of any information regarding unprofessional conduct complaints, or investigations thereof, in response to an order from a court of competent jurisdiction, or to State or federal law enforcement or regulatory agencies," provided the receiving agency complies with certain confidentiality requirements. This subsection provides an exception to the confidentiality rules in § 131(c) and (d) for court orders and agency requests. While § 131(g) authorizes OPR to release records pursuant to a court order, the provision does not itself provide a right to disclosure. For a court to order release of the records, petitioner would have to prove a right to the records under some other authority.

¶ 29. In sum, while the Legislature carved out a limited role for complainants in § 129(d), it did not create an adversarial process between the complainant and the licensee entitling the complainant to review the licensee's submissions to OPR at the investigative stage of the proceedings. The statutory scheme does not grant complainants a right to the documents petitioner

14

requests; in fact, it prohibits such disclosure. Because the statutory scheme does not create an expectation to or interest in the records, petitioner has no liberty interest in said records, and accordingly no due process right to them under the Fourteenth Amendment.

¶ 30. The same result obtains under Article 10 of the Vermont Constitution. Article 10 provides in part that no person can be "justly deprived of liberty, except by the laws of the land." Vt. Const. ch I, art. 10. Although the phrase " 'laws of the land' in Article 10 is synonymous with the term 'due process of law' contained in the Fourteenth Amendment," we have declined to adopt the U.S. Supreme Court's reliance on phrases like "liberty interest" to decide when the procedural due process right attaches under the Vermont Constitution. Parker v. Gorczyk, 170 Vt. 263, 272-73, 744 A.2d 410, 416-17 (1999). Instead, we seek to determine "the point along the continuum of claimed interests at which due process protections are warranted." Id. at 273, 744 A.2d at 417. This entails "a fact-sensitive examination of the particular circumstances involved, including consideration of the nature and significance of the interest at stake, the potential impact of any decision resulting in a deprivation of that interest, and the role that procedural protections might play in such a decision." Id.; see also Conway, 171 Vt. at 377-78, 765 A.2d at 466 (discussing and applying Parker test).

¶ 31. We first emphasize the narrowness of the interest petitioner raises—a complainant's interest in obtaining records filed by the psychologist at the investigation stage of the proceedings. The significance of this interest is greatly limited by the fact that complainants can supply all the evidence of misconduct in their possession when they file the complaint. Further, if the investigation leads to disciplinary charges or results in a stipulation, the complainant receives a host of information and procedural protections, including access to the pleadings filed by the parties, access to the transcript of disciplinary hearings and any exhibits admitted therein, a right to obtain a copy of a stipulation, a right to notice of the stipulation review, and a right to be heard at the stipulation review. See 3 V.S.A. §§ 129(d), 131(c)(2)(A)-(F). The potential impact of OPR's decision depriving petitioner of the records is even more limited. Any legal claim a

complainant has against a psychologist can be litigated in a court of law, where the complainant is afforded the full panoply of procedural rights available in civil litigation, including the rules of discovery. There is little risk that denying complainants access to the records at issue will result in unaddressed injuries. Given the limited interest at issue, the procedural protections complainants already enjoy in the disciplinary proceedings, and the availability of alternative proceedings to redress complainants' grievances against psychologists, we conclude that petitioner does not have a right to the records under Article 10.

¶ 32. Because petitioner does not have a right to the records under either the Fourteenth Amendment or Article 10, he fails to satisfy the clear-and-certain-right requirement to obtain mandamus relief. Because it appears beyond doubt that no facts or circumstances exist that entitle petitioner to relief, the superior court did not err in dismissing the petition under Rule 12(b)(6).

Affirmed.

FOR THE COURT:

_____

Associate Justice

16