Filed 02/20/26

VERMONT SUPERIOR COURT
Orleans Unit
247 Main Street
Newport VT  05855
802-334-3305
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-04826

Thomas Fuss v. Assistant Attorney General Patrick T. Gaudet et al

## ENTRY REGARDING MOTION

Title:         Motion to Dismiss (Motion: 2)
Filer:         Patrick T. Gaudet
Filed Date:   December 24, 2025

### I. Procedural Posture

On October 31, 2025 the Plaintiff filed civil complaint seeking declaratory and injunctive relief against multiple officials in the State of Vermont, relating to their involvement in the Public Utility Commission's (PUC) issuance of a Certificate of Public Good in Case. No. 24-1755-PET, or collateral litigation relating thereto.

On December 24, 2025 a motion to dismiss was filed by the Defendants, through counsel. A memorandum in opposition was filed on January 8, 2026 by the Plaintiff, and a reply was filed on January 21, 2026.

### II. Factual Background

The Plaintiff's complaint contains eleven specific requests for relief, which fall into several categories. See *Civil Complaint*, filed Oct. 31, 2025 at pp. 35-36.

First, the Plaintiff seeks immediate injunctive relief relating to "further uttering" of the PPG issued by the PUC in Case No. 24-1755-PET, and that the court vacate the CPG. Secondarily, the complaint seeks a declaratory judgment as to the distinction between the terms "personal wireless service facility" and "telecommunications facility" within Case No. 24-1755-PET and collateral federal litigation between the applicant, Industrial Tower Wireless (ITW), and the State of Vermont. The relief sought also includes a request that the court "confirm that ITW's inconsistency constitutes perjury."

Second, the Plaintiff requests that the court "prohibit TWI from making the above fraudulent claim during the application process in Westmore site or other proposed sites in Vermont when they cannot produce supporting facts at the time of application.

Third, the Plaintiff seeks a finding by the court and declaratory relief that the signatures of PUC commissioners "were obtained through false pretenses due to perjury by ITW".

Fourth, the Plaintiff seeks declarative relief with a finding "that the Attorney General was negligent in her representation of the PUC" and "negligent in her failure to enforce the laws stated in this complaint." Additionally, a finding by the court that "Assistant Attorney General Peter Gaudet was negligent in his failure to represent the PUC in any capacity and influenced the obtaining of the signatures under false pretenses and for his failure to enforce the laws stated in this complaint." Upon such findings, the Plaintiff then seeks that the court "[r]ule in favor of a Complaint against the Attorney General and Assistant Attorney General under 13 V.S.A. § 3006 Neglect of duty by public officers (see paragraph IV in Relevant Statutes and Laws).Title 13: Crimes and Criminal Procedure Chapter 67: Public Justice and Public Officers § 3006. Neglect of duty by public officers § 3009. Refusing or delaying to execute criminal process. Plaintiff request that the Court sanction Charity Clark and Patrick Gaudet to full extent of its ability."

Finally, the Plaintiff requests injunctive relief relating to protections available under 9 V.S.A. §5617 (Vermont Whistleblower Award and Protection Act).

The Defendants assert that the complaint is defective on several grounds and must be dismissed. First, alleging a lack of jurisdiction by the court based on the Plaintiff's lack of standing to be afforded relief. Second, the inapplicability of any extraordinary writs to provide a basis for relief to the Plaintiff. Third, the application of absolute immunity or qualified immunity to the acts and exercises of discretion by the Defendants in their official capacities. Finally, failure to state claims upon which relief may be granted.

The Plaintiff's claims are premised on the assertion that the distinction between the terms "telecommunications facility" and "personal wireless services facility" as used by ITW in Case No. 24-1755-PET and collateral federal litigation constitutes a form of "perjury." Further, the reliance thereupon by the PUC commissioners constitutes the "creation of false pretenses to obtain three signatures" and the resultant declination of the Office of the Attorney General to intervene constitutes "negligence". *Id*. at pp. 5-6. While the claims and requests for relief are distinct, all are based upon this issue of terminology used by ITW.

### III. Discussion

*A. Lack of standing*

The Defendants have asserted that the Plaintiff lacks standing to raise these claims. *Housing Our Seniors in Vermont Inc. v. Agency of Com. & Cmty. Dev.* provides:

> To establish standing, plaintiffs must "at an irreducible minimum demonstrate the following constitutional elements: (1) injury in fact, (2) causation, and (3) redressability." Plaintiffs must allege sufficient facts to establish standing "[o]n the face of the complaint." These requirements apply equally in an action seeking declaratory relief.
>
> To satisfy this initial burden, a plaintiff must demonstrate that there is "an actual controversy between the parties." "Otherwise, the judgment would be no more than an advisory opinion, which we lack the constitutional power to render." The

> existence of an actual controversy "turns on whether the plaintiff is suffering the threat of actual injury to a protected legal interest, or is merely speculating about the impact of some generalized grievance."

219 Vt. 80, 85–86 (2024) (internal citations omitted); see also *Parker v. Town of Milton*, 169 Vt. 74, 76-77 (1998) (discussing Vermont's adoption of the standing requirement set forth in Article III of the United States Constitution, and nothing that judicial power is limited to determination of "actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction." (quoting *In re Constitutionality of House Bill 88*, 115 Vt. 524, 529 (1949)). "Stated another way, a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct, which is likely to be redressed by the requested relief. …The injury must be an 'invasion of a legally protected interest,' not a generalized harm to the public." *Id*. at 78 (internal citation omitted).

Further, "[t]The existence of an actual controversy 'turns on whether the plaintiff is suffering the threat of actual injury to a protected legal interest, or is merely speculating about the impact of some generalized grievance.'" *Parker*, 219 Vt. at 77 (quoting *Town of Cavendish v. Vermont Pub. Power Supply Auth.*, 141 Vt. 144, 147 (1982). This requirement also applies to circumstances where declaratory relief is sought. *Cavendish*, 141 Vt. at 147.

In reviewing the Plaintiff's filings there is no assertion of injury to him personally. Instead, the only cognizable theory of standing asserted is by virtue of the CPG's invitation of "[r]eaders are requested to notify the Clerk of the Commission … of any apparent errors, in order than any necessary corrections may be made." *Civil Complaint*, at p. 3. The Plaintiff has not actually asserted that he contacted the PUC to address an apparent error, instead, he references correspondence with an assistant attorney general. *Id*. at pp. 6-7. Notwithstanding this, the notion that an invitation by readers of a publicly available order should provide notice of technical or clerical errors creates standing in this context is unsupported by any legal authority cited by the Plaintiff and would constitute a blanket grant of standing to any person reading the order. This is an illogical and unjustifiable reading of the "boilerplate" language as the Defendants have referred to it. See *Reply Brief*, dated January 21, 2026 at p. 6.[1]

The Plaintiff further asserts that "Since Lake Willoughby's 'Landmark' status does not protect it from the claims of Civil Action No. 2: 24-cv-1426-WKS, this is consequentially catastrophic for the future, and even the summits of Mt. Hor and Mt. Piscah could be demanded for tower construction if the Attorney General fails to defend Vermont statutes of law and the Vermont Constitution." Id. at p. 9. Again, this does not allege any form of direct injury to the Plaintiff.

This generalized claim of potential or prospective harm to a viewshed or natural resource is premised upon a series of assumptions as to the precedential value of decisions or impact of the Office of the Attorney General's decisions. Although not expressly asserted, this claim – despite its wholly speculative nature – may implicitly invoke standing under a "derivative taxpayer" theory. *Baird v. City of Burlington* provides:

---

[1] Even a liberal reading of the language does not impart any rights or mechanism of enforcement to compel the PUC to actually respond to or correct any errors reported by readers of the order.

Although taxpayer suits in Vermont are generally "recognized as appropriate vehicles for seeking relief from official action," to have standing a plaintiff must still demonstrate that she has either sustained some "direct loss" or that municipal assets have been "improperly wasted." Merely invoking one's status as a taxpayer is not enough to invoke standing under a taxpayer suit.

201 Vt. 112, 122–23 (2016) (internal citations omitted). Here, the complaint makes no such assertions and the Plaintiff has not (in his subsequent filings) provided any further clarity as to how he is injured, directly or indirectly, instead offering:

But no administrative decision is being challenged within normal adjudication, it is the intervention by a Civil Action that is being challenged. The PUC was forced to defend themselves in a court of law and that was certainly not their decision or a decision they made, but the aggression of ITW's malfeasance.

…

The Plaintiff's case is based on of being solicited by the PUC itself as demonstrated in the complaint, to find errors and upon finding them reporting them to the PUC, the Governor and the Attorney General on numerous occasions. Plaintiff even posted a video on YouTube entered into evidence featuring Charity Clark being confronted by the Plaintiff at a public Q & A.

Plaintiff has assumed the time and expense of whistleblowing on a serious crime, and an "actual case and controversy," to obtain signatures of three separate PUC commissioners under false pretenses. The normal adjudicative proceedings of the PUC were interrupted by an act of fraud from perjury committed in US District Court.

*Memorandum in Opposition*, dated January 8, 2026, at pp. 6-7. Critically, 9 V.S.A. §5617 does not provide any jurisdictional basis for standing as applied to this situation, and moreover, the reliance on this statute, part of the Vermont Uniform Securities Act (2002) (9 V.S.A. § 5101, et. seq.) appears inapplicable to these circumstances.

Accordingly, the Plaintiff has failed to allege sufficient facts to confer standing on the face of the complaint. See, e.g., *Cavendish*, 141 Vt. at 147–48.

*B. Lack of subject matter jurisdiction*

The complaint is also subject to dismissal, separately, on the basis of the court's absence of subject matter jurisdiction over the claims. V.R.C.P. 75(a) provides, in pertinent part, that "[a]ny action or failure or refusal to act by an agency of the state or a political subdivision thereof, including any department, board, commission, or officer, that is not reviewable or appealable under Rule 74 … may be reviewed in accordance with this rule if such review is otherwise available by law."

When considering a motion to dismiss for lack of subject matter jurisdiction under V.R.C.P. 12(b)(1), "'all uncontroverted factual allegations of the complaint [are] accepted as true and construed in the light most favorable to the nonmoving party.' 'A court may consider evidence outside the pleadings.'" *Mullinnex v. Menard*, 212 Vt. 432, 438–39 (2020) (citations omitted).

V.R.C.P. 75 allows limited judicial review of governmental administrative decisions, but only "if such review is otherwise available by law." The Vermont Supreme Court has interpreted this provision to mean that review is allowable if it "is provided by the particular statute establishing an agency," or falls under one of the common law writs, namely: *certiorari*, *mandamus*, or prohibition. *Rheaume v. Pallito*, 190 Vt. 245, 250 (2011).[2]

Here, there is no statutory right to review asserted by the Plaintiff, nor has the court independently identified any statutory basis for his claims, leaving only one of the common law writs available (noting that the Plaintiff was not a party to any of the collateral proceedings in U.S. District Court or the PUC proceedings).

Review under a writ of *certiorari* allows judicial examination of decisions taken by public officers that are quasi-judicial in nature. The PUC's actions in this instance are not reviewable under *certiorari* because there is a statutorily defined process for appeal of its decisions. See 30 V.S.A. § 12 (providing for judicial review of final orders or judgments of the PUC by the Vermont Supreme Court). When "there is no independent right to review outside the remedy provided by statute and … the Legislature chose not to include members of the general public among those entitled to review[,]" certiorari review under V.R.C.P. 75 is unavailable. *Friends of Pine Street v. City of Burlington*, 212 Vt. 342, 347 (2020); see also *In re PATH at Stone Summit, Inc.*, 205 Vt. 112 ("When the Legislature has specifically mandated which parties have standing to appeal a case, we have held that this Court must adhere to those restrictions and may not judicially expand the class of persons entitled to such review.").

No review available in this instance under a writ of prohibition. "The function of a writ of prohibition is to prevent the unlawful assumption of jurisdiction by a tribunal contrary to common law or statutory provisions." *In re Mattison*, 120 Vt. 459, 463 (1958). Prohibition is plainly inapplicable here.

---

[2] However, V.R.C.P. 81(b) provides:

> The writs of scire facias, certiorari, mandamus, prohibition, and quo warranto are hereby abolished. Review of any action or failure or refusal to act by a governmental agency shall be in accordance with the procedure prescribed by Rule 74 or 75, as appropriate. Any other relief heretofore available by any of such writs may be obtained by appropriate action or motion under the practice prescribed by these rules. In any proceedings for such review or relief in which an order that an agency or other party do or refrain from doing an act is sought, all provisions of these rules applicable to injunctions shall apply.

The Vermont Supreme Court, notwithstanding the ostensible abolishment of the common law writs, has nevertheless continued to recognize these concepts as a residual basis of authority for judicial relief beyond the scope of V.R.C.P. 75 review.

Finally, the last prospective avenue of review is pursuant to a writ of *mandamus*. *Mandamus* is a remedy wherein the Court "require[s] a public officer to perform a simple and definite ministerial duty imposed by law." *Sagar v. Warren Selectboard*, 170 Vt. 167, 171 (1999). "A writ of mandamus can enforce the performance of only existing duties. It can neither create new duties nor require of a public officer more than the law has made it his duty to do." *Grout v. Gates,* 97 Vt. 434, 453 (1924) (quotation omitted).

Mandamus relief, when granted, permits the court to order an official, agency, or lower tribunal to perform a simple and definitive ministerial duty imposed by law. See, e.g., *Island Ind., LLC v. Town of Grand Isle*, 215 Vt. 162 (2021). In order for a court grant such relief, the following requirements must be satisfied:

> (1) the petitioner must have a clear and certain right to the action sought by the request for a writ; (2) the writ must be for the enforcement of ministerial duties, but not for review of the performance of official acts that involve the exercise of the official's judgment or discretion; and (3) there must be no other adequate remedy at law.

*Wool v. Menard*, 207 Vt. 25, 31 (2018) (citing *In re Fairchild*, 159 Vt. 125, 130 (1992). Here, the Plaintiff fails to satisfy the first two prongs. The first prong is essentially a restatement of the requirement for standing, that is, a plaintiff must demonstrate injury. The Attorney General owes no duty to the Plaintiff here, either in providing advice or responding to his concerns in the collateral matters to which the State of Vermont was a party. Illustrative of this, is the Vermont Supreme Court's recent decision in the matter of *Off. of Auditor of Accts. v. Off. of Att'y Gen.*, 2025 VT 36, ¶ 48, 342 A.3d 948, 966 (Vt. 2025):

> In a situation in which the Attorney General refuses to provide advice to an "elective [or] appointive State officer[ ]," the only person who could seek recourse through mandamus to order the Attorney General to comply with 3 V.S.A. § 159 is that officer.

The Plaintiff is not an officer of the State of Vermont and he has cited no other authority that would require or compel the Attorney General to act as he desires.

Second, the claims relating to the Office of the Attorney General's declination to act on the information shared by the Plaintiff speaks to an inherently discretionary exercise of judgment. The Plaintiff can point to no statute constraining the Attorney General's ability to exercise discretion in its conduct relating to litigation on behalf of the State of Vermont. See, e.g., *Off. Od Auditor of Accts.*, at ¶ 51 ("a lawyer's 'provision of a legal opinion to a client' is a 'matter uniquely in the lawyer's judgment and discretion.'"). The Vermont Supreme Court has repeatedly recognized the discretion of the Attorney General over civil and criminal matters where the State of Vermont is a party or has an interest. Specifically, "[t]he prosecutorial function is a discretionary activity and is not subject to mandamus. The Attorney General has no binding duty to act in compliance with plaintiff's request." *Bloomer v. Cheney*, 131 Vt. 552, 553 (1973) (internal citations omitted). Further, 3 V.S.A. § 157 provides, in pertinent part, that "[t]he Attorney General shall appear for the State in the preparation and trial of all … civil or criminal

causes in which the State is a party or is interested when, *in his or her judgment*, the interests of the State so require." (emphasis added); see also *McLaughlin v. State*, 161 Vt. 492, 500 (1994) (noting in the context of a contested case, that "[i]t is inappropriate for us to try to decide at this point the scope of [the Attorney General's] discretion or its applicability here.").

Additionally, even under the standard of a so-called "extreme abuse of discretion," where *mandamus* is used to address truly arbitrary abuses of power, relief would be unavailable. *See Vermont State Employees' Ass'n, Inc. v. Vt. Crim. Justice Training Council*, 167 Vt. 191, 195 (1997). Case law has made clear that an extreme abuse of discretion must amount "to a practical refusal to perform a certain and clear legal duty." *Inman v. Pallito*, 195 Vt. 218, 224 (2013) (internal quotation omitted). Absent that, *mandamus* may not issue, no matter how seemingly arbitrary or extreme the Attorney General's decision making may appear.

In summary, there is no basis for relief under any of the available writs and the court lacks subject matter jurisdiction, as asserted and articulated through the Defendants' filings.

*C. Failure to state a claim upon which relief may be granted*

Notwithstanding the jurisdictional issues discussed, some of the requested relief is beyond the scope of remedies the court may provide. A motion to dismiss for failure to state a claim under V.R.C.P. 12(b)(6) faces a high bar. Dismissal pursuant to V.R.C.P. 12(b)(6) is appropriate where "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Amiot v. Ames,* 166 Vt. 288, 291 (1997) (citation omitted).

The Vermont Supreme Court has described the familiar standard for such motions as follows:

> "A motion to dismiss . . . is not favored and rarely granted." This is especially true "when the asserted theory of liability is novel or extreme," as such cases "should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations." In reviewing a motion to dismiss, we consider whether, taking all of the nonmoving party's factual allegations as true, "'it appears beyond doubt' that there exist no facts or circumstances that would entitle the plaintiff to relief." We treat all reasonable inferences from the complaint as true, and we assume that the movant's contravening assertions are false.

*Alger v. Dep't of Labor & Indus.*, 181 Vt. 309, 316–17 (2006) (citations omitted); *see also* 5B A. Benjamin Spencer, *et al., Fed. Prac. & Proc. Civ*. § 1357 (4th ed.) ("Ultimately, the burden is on the moving party to prove that no legally cognizable claim for relief exists."). The record for V.R.C.P. 12(b)(6) purposes generally, though, is limited to the four corners of the complaint and any attachments to it. *See Nash v. Coxon*, 152 Vt. 313, 314–15 (1989).[3]

---

[3] The Supreme Court has sometimes suggested that the standards for dismissal under V.R.C.P. 12(b)(1) and (6) are both evaluated on the question of whether "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Wool v. Off. of Pro. Regul*., 2020 VT 44, ¶ 13, 212 Vt. 305 (internal quotation omitted).

This standard is particularly relevant to the requested declaratory relief and request to sanction the Attorney General or subordinates. First, the initiation of criminal prosecutions is reserved to the executive branch, primarily through county State's Attorneys or, alternatively, through the Office of the Attorney General. See 24 V.S.A. § 361; 3 V.S.A. § 152. The court has no ability to commence a substantive prosecution under Vermont's criminal laws, and the court's limited powers of contempt are neither sought nor applicable to these circumstances.

Additionally, 12 V.S.A. § 4716 provides that "[t]he court may refuse to render or enter declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." See also, e.g. *Donahue v. Town of St. Johnsbury*, No. 2007-015, 2007 WL 5313319, at *2 (Vt. June 2007). Here, declaratory judgment as to the decision making of the Attorney General or her subordinates would not resolve any uncertainty or modify any of the outcomes in the collateral litigation.

## IV. Order of the Court

Based on the foregoing the motion to dismiss is GRANTED.

So ordered.

Electronically signed on Thursday, February 19, 2026 pursuant to V.R.E.F. 9(d)

_____
Rory T. Thibault
Superior Court Judge